UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ADRIAN DAMON SIMS,<br><br>                   Plaintiff,<br>    v.<br><br>CITY OF LAKEWOOD,<br><br>                   Defendants. | CASE NO. 3:20-cv-06201-DGE<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT (DKT. NO. 37) |

**I        INTRODUCTION**

This matter comes before the Court on Defendants City of Lakewood and James Syler's Motion for Summary Judgment. (Dkt. No. 37.)

**II        BACKGROUND**

On October 12, 2017, Katherine Sims made a complaint alleging her husband Adrian Sims had violated a domestic violence protection order. (Dkt. No. 38 at 36.) Pierce County officers arrived at the scene and believed Mr. Sims was inside Mrs. Sims' home. (*Id*. at 33.) Specifically, the officers believed Mr. Sims was hiding inside a crawl space. (*Id.*) The crawl

space had only one way to exit and enter. Upon reaching the entrance of the crawl space, the officers called out to Mr. Sims, asking him to surrender. (*Id*. at 9.) Mr. Sims could hear the officers commanding him to exit the crawl space but remained silent. (*Id*.)

Lakewood City police officer James Syler was dispatched to the house with his police dog "Rock". (*Id*. at 32.) Officer Syler called into the crawl space, informing Mr. Sims that if he did not exit the space, Officer Syler would release Rock into the space. (*Id*. at 26.) Officer Syler told Mr. Sims that if Rock found Mr. Sims, Rock would bite him. (*Id*.) Mr. Sims heard Officer Syler's remarks but remained silent. (*Id*.)

When Mr. Sims did not exit the crawl space following the warnings, Officer Syler released Rock into the crawl space. (*Id*.) Within moments, Rock found Mr. Sims. (*Id*. at 10.)

What happened next is disputed. Mr. Sims alleges Rock bit him on the right shoulder. (*Id*.) Once Rock bit him, Mr. Sims grabbed hold of the dog by the muzzle and the collar area, to prevent further biting. (*Id*.) Mr. Sims then alleges two officers—Officer Syler, the dog handler, and Pierce County officer Steben Pritchard—entered the crawl space. (*Id*. at 11.) According to Mr. Sims, he pleaded with the officers to remove Rock, saying multiple times that if they removed the dog he would surrender peacefully. (*Id*. at 12.) Mr. Sims says the officers would not remove the dog despite his pleas. (*Id*.)

Officer Syler alleges he did not hear Mr. Sims ask him to remove Rock, only indistinct yelling. (*Id*. at 28.) The officer alleges he saw the dog biting Mr. Sims' leg at this time. (Dkt. No. 42-1 at 12.) Officer Syler says he commanded Mr. Sims to put up his hands and stop holding onto Rock so he could remove Rock safely. (*Id*. at 12, 14.)

1    Mr. Sims alleges Officer Pritchard punched him in the face. (Dkt. No. 38 at 12.) Officer
2    Syler instead says he himself struck Mr. Sims, because he thought Mr. Sims was reaching for his
3    gear. (Dkt. No. 42-1 at 16.)

4    Finally, Officer Syler removed Rock from Mr. Sims. (*Id*. at 18.) Mr. Sims says he did
5    this by holding onto Rock's leash and pulling Rock by the collar; Officer Syler says he did it by
6    grabbing Rock's harness. (*Id*. at 24; *Id*. at 18.) Mr. Sims says Officer Syler gave no verbal
7    command to call Rock off; Officer Syler says he gave one. (*Id*. at 24; *Id*. at 18.)

8    Mr. Sims immediately put his hands behind his back and Officer Pritchard handcuffed
9    him. (*Id*. at 24.) Mr. Sims says he looked over at Rock to make sure Officer Syler was securely
10   holding him. (Dkt. No. 38 at 13.) He saw that Officer Syler was holding Rock firmly by the
11   collar and that Rock was staring at him. (*Id*.) He then briefly looked away, anticipating getting
12   up to exit the crawl space. (*Id*.) In that moment, Mr. Sims alleges Rock lunged at him and bit
13   him on the thigh. (*Id*. at 14.) Mr. Sims says that, although he did not see it, Officer Syler
14   intentionally let Rock loose to bite Mr. Sims again. Officer Syler denies that Rock bit Mr. Sims
15   a second time at all, either by his intentional release or by Rock's escape. Officer Syler
16   maintains the thigh bite occurred when Rock was first released into the crawlspace.

17   Mr. Sims asserts that after Rock bit him this second time, while in handcuffs, he begged
18   the officers to remove the dog. (Dkt. No. 38 at 14.) He says Officer Syler waited to remove the
19   dog. (*Id*.) Mr. Sims alleges Officer Syler did not remove the dog "until Officer [Pritchard] said
20   'That's enough.'" (Dkt. No. 42 at 4.)

21   Defendants City of Lakewood and Officer Syler have moved this Court for Summary
22   Judgment. They note Mr. Sims did not actually see Officer Syler intentionally release Rock nor
23   hear him issue a command to attack a second time. Because of this, they argue Mr. Sims has
24

failed to put forth facts to show an intentional release. Accordingly, Defendants argue, even viewing the facts in a light most favorable to Mr. Sims, the alleged second bite was at most an accident and precludes Officer Syler and the City from liability.

Plaintiff has asked the Court to dismiss their negligence and assault and battery claims against the Defendants. Remaining are the § 1983 and strict liability claims against both defendants.

### III   DISCUSSION

#### A. Legal Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

### B.  § 1983 Claim Against Officer Syler

Mr. Sims brings a 42 U.S.C. § 1983 claim against Officer Syler for excessive force, a violation of the Fourth Amendment. Claims that law enforcement officers used excessive force during an arrest must be analyzed under the Fourth Amendment and its "reasonableness" standard. *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005). The reasonableness analysis balances the "nature and quality of the intrusion" on a person's liberty with the "countervailing governmental interests at stake" to determine whether the use of force was objectively reasonable under the circumstances. *Graham v. Connors*, 490 U.S. 386, 396 (1989). The reasonableness inquiry is objective: "The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them[.]" *Id*. at 397.

To evaluate reasonableness, courts use the framework outlined in *Graham v. Connor*, which lists three factors of consideration. *Id*. at 396. These non-exhaustive factors are "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of

the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396.  The Ninth Circuit has held "the availability of alternative methods of capturing or subduing a suspect may be [an additional] factor to consider." *Chew v. Gates*, 27 F.3d 1432, 1441 n.5 (9th Cir. 1994).

At issue here is the "most important *Graham* factor":  whether Mr. Sims posed an immediate threat to the safety of the officers or others. *Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) (citing *Smith*, 394 F.3d at 702) (internal quotation marks omitted)).  In *Drummond v. Anaheim*, police officers continuously knelt on a man who had surrendered and was handcuffed until he could not breathe. 343 F.3d. 1057.  The Ninth Circuit held that "after he was knocked to the ground where the officers cuffed his arms behind his back, a jury could reasonably find that he posed only a minimal threat to anyone's safety." *Id*. at 1057-58 (cleaned up).  Here too, Mr. Sims alleges he was intentionally attacked <u>after</u> surrendering and being handcuffed.  If a dispute as to this fact exists, it would be material to the evaluation of his excessive force claim.

                i.  Dispute as to intentional release of Rock

At the heart of this motion is whether there is a genuine dispute about the intentional release of Rock once Mr. Sims was in handcuffs.  Mr. Sims argues Officer Syler intentionally let Rock loose.  The Defendants counter that, even if Rock did bite Mr. Sims while he was in handcuffs, because Mr. Sims did not see Officer Sims intentionally release the dog, and because Mr. Sims did not hear Officer Sims issue a command to attack, this at most amounts to an accident.  Defendants say, even if it was an accident, no liability can attach.

The Court finds there is a genuine dispute about the allegedly intentional release.  Even though Mr. Sims had looked away at the moment Rock lunged at him the second time, Mr. Sims points to several other facts that could lead a reasonable juror to believe it was intentional.

First, Mr. Sims indicates he looked at Rock and Officer Syler just seconds before the dog bit him. Mr. Sims says Officer Syler had a tight hold on Rock, firmly gripping him by the collar. He alleges that as soon as he turned away, Rock lunged to bite him on the thigh. A reasonable juror might conclude the only way Rock could have bitten Mr. Sims the second time is if Officer Syler had intentionally loosened his firm grip on the collar.

Second, Mr. Sims points to the other officer's language after Rock lunged. Mr. Sims admittedly does not remember all that was said during the second dog bite, but distinctly recalls Officer Pritchard saying "Enough" to Officer Syler. A reasonable juror might conclude Officer Pritchard believed Officer Syler intentionally let Rock loose and was telling him to stop.

Third, Defendants allege Rock has never failed the "calling off the dog" test before. (Dkt. No. 38 at 20.) Viewed in the light most favorable to Mr. Sims, this might cause a reasonable juror to find, if Rock did attack, it would have been at the command of his handler.

Lastly, Officer Syler stated in his deposition that merely pulling a dog off a suspect is not a command to stop biting; something more is needed. Mr. Sims alleges that when Officer Syler pulled Rock off Mr. Sims, he did so only by pulling on to the collar and leash, without any oral command. Although Officer Syler asserts he did issue a verbal command, viewing the facts in Mr. Sims' favor, the reasonable juror might believe Officer Syler should have known that if he let go of Rock, Rock would again try to bite Mr. Sims.

The Court does not weigh the credibility of these speakers. Instead, it merely views the facts in the light most favorable to Mr. Sims and concludes a material dispute does exist as to whether Officer Syler intentionally released Rock a second time. This fact is material as it implicates Mr. Sims' constitutional right to be free from police dog attack after having surrendered and been handcuffed.

ORDER ON MOTION FOR SUMMARY JUDGMENT (DKT. NO. 37) - 7

### ii. Qualified immunity

Officer Syler contends he is entitled to qualified immunity. To determine whether an officer is entitled to qualified immunity, the Court must first "ask whether the facts taken in the light most favorable to the plaintiff show that the officer's conduct violated a constitutional right" and then assess "whether the right in question was clearly established at the time of the officer's actions, such that any reasonably well-trained officer would have known that his conduct was unlawful." *Orn v. City of Tacoma*, 949 F.3d 1167, 1174 (9th Cir. 2020). When a "'defendant's conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts' that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (quoting *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993).

It is clearly established that a police officer may use only minimal force on an suspect once they are handcuffed and subdued. *Drummond v, City of Anaheim*, 343 F.3d 1052, 1057-58 ("All three *Graham* Factors would have permitted the use of only minimal force once Drummond was handcuffed and lying on the ground.") Depending on the circumstances and the injuries sustained, police dog bites can be considered "severe" force. *See Miller v. County*, 340 F.3d 959 (9th Cir. 2003) (holding a police dog that bit down on a suspect for 45 seconds was "considerable" and "serious" force); see also *Chew*, 27 F.3d 1432 (holding a police dog that bit down on a suspect causing injury was "severe" force). Here, Mr. Sims alleges he had already surrendered and been placed in handcuffs when the dog attacked. He alleges the dog bit him and held on, despite his pleas to Officer Syler to remove it. He further alleges he suffered significant injury from being bitten after he was handcuffed. Under these circumstances, it would have been

clear to any reasonably well-trained officer that use of a trained police dog to bite an unarmed person who had surrendered and was handcuffed would be unconstitutional.  If a jury finds Rock did in fact bite Mr. Sims a second time after Mr. Sims was handcuffed, and that Officer Syler did in fact intentionally release Rock a second time, this will preclude Officer Syler from immunity.  Thus, the disputed fact about the second release of Rock is material to the question of Officer Syler's qualified immunity.

### C.  § 1983 Monell Claim Against City of Lakewood

To prove a *Monell* claim against a city based on an officer's use of excessive force, a plaintiff must show "(1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011) (cleaned up) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir.1997) (internal quotation marks and citation omitted).

Here, Mr. Sims alleges no such policy or practice that the City of Lakewood supports a K-9 handler's intentional release of a dog on a handcuffed suspect.  Mr. Sims points to the City policy that K-9's are to be used in "the apprehension of suspects of crimes of violence".  (Dkt. No. 42-1 at 38.)  Mr. Sims makes two, equally unconvincing, arguments as to why this amounts to a policy of deliberate indifference.

First, Mr. Sims argues that the *lack* of an explicit policy banning use of force on handcuffed suspects constitutes a policy of *allowing* this type of force.  He asserts that the "lack of clear policy articulation [in the Lakewood Police Department Manual of Standards] allows the [police service dog] handler complete discretion to deploy a K-9 to search for a suspect under

any circumstances except the few restrictions articulated in [the Manual of Standards]." (Dkt. No. 42 at 12.)

The restrictions listed in the Manual of Standards do not appear to be exhaustive. In fact, they prohibit use of police dogs in "circumstances which might discredit the police department". (Dkt. No. 42-1 at 38.) This blanket prohibition indicates handlers do not have complete discretion as Mr. Sims alleges. Further, a police department is not expected to explicitly prohibit or allow every possible situation. Failing to explicitly forbid use of police dogs on handcuffed suspects does not constitute a policy allowing the use of a police dog on a handcuffed suspect

Second, Mr. Sims claims the conflicting responses on the post-incident forms indicate "policy and supervision failures". (Dkt. No. 42 at 12.) At one point in Officer Syler's incident report, he indicated there was a citizen injury and at another he indicated there was no citizen injury. Mr. Sims alleges this conflicting report is a result of the County's failure to have a policy regarding use of police dogs on handcuffed suspects and a failure to supervise. This is unconvincing. Firstly, pointing to a single instance of unconstitutional activity is generally not sufficient to rise to a "policy" in a claim for municipal liability. *Benavidez v. County of San Diego*, 993 F.3d 1134 (9th Cir. 2021). While a single instance may in rare circumstances create liability, this instance must be "so inconsistent with constitutional rights" as to do so. *Id*. at 1153 (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997). The error Mr. Sims alleges does not appear to be evidence of a policy allowing handlers to release dogs on handcuffed suspects, nor it is clear how this individual error would be inconsistent with constitutional rights. It similarly provides no evidence that the County was failing to train its officers.

Accordingly, there is no genuine issue of material fact as to the *Monell* claim. Even if Officer Syler did release Rock intentionally to bite the handcuffed Mr. Sims, there are no facts supporting a City of Lakewood policy or practice allowing this behavior.

### D. Strict Liability Claim Against All Defendants

Plaintiff alleges Defendants are strictly liable for the second bite, citing Washington law that dog handlers are strictly liable for their dog's bites. Wash. Rev. Code § 16.08.040(1). Defendants claim immunity from strict liability, citing an exception for police dogs in Wash. Rev. Code § 4.24.410 : "[a]ny dog handler who uses a police dog in the line of duty in good faith is immune from civil action for damages arising out of such use of the police dog or accelerant detection dog." Further, Defendants note that strict liability does not apply to lawful applications of a police dog. (Dkt. No. 37 at 19.)

The question is if there is a genuine issue of material fact as to whether Officer Syler was acting in good faith and when he allegedly released Rock the second time. As explained above, there is a genuine issue of material fact as to whether the officer released Rock, and specifically whether he *intentionally* released Rock. In addition to being material to the § 1983 claim against Officer Syler, this fact is equally material to the strict liability claim. If the finder of fact concludes Officer Syler intentionally released Rock in order to bite Mr. Sims a second time, when Mr. Sims had already surrendered and was in handcuffs, this could be strong evidence of bad faith as well as an unlawful application of a police dog.

Notably, if Officer Syler is found strictly liable, the City would also be strictly liable under the Washington statute. *See Rogers v. City of Kennewick*, 304 Fed.Appx. 599 (9th Cir. 2008) (finding the Washington statute clearly allows for municipal liability in strict liability K-9 bite cases).

Accordingly, because Officer Syler's release of Rock a second time is a material disputed fact, the strict liability claim against both defendants stands.

## IV   CONCLUSION

Accordingly, and having considered Defendants' motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Defendants City of Lakewood and James Syler's Motion for Summary Judgment is GRANTED in part and DENIED in part.

1. As to the negligence claims against the defendants, it is GRANTED.
2. As to the assault and battery claims against the defendant, it is GRANTED.
3. As to the 1983 Claim against Officer Syler, it is DENIED.
4. As to the 1983 *Monell* Claim, it is GRANTED.
5. As to the strict liability claim, it is DENIED.

Dated this 20th day of June, 2023.

David G. Estudillo
United States District Judge